Jun 27, 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **19-20388-CR-MARTINEZ/OTAZO-REYES**

18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(2)(A)
18 U.S.C. § 1956(a)(2)(B)(i)
18 U.S.C. § 2
18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA

vs.

LUIS ALFREDO MOTTA DOMINGUEZ and
EUSTIQUIO JOSE LUGO GOMEZ,

        Defendants.
_____/

### INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless otherwise specified:

### RELEVANT STATUTORY BACKGROUND

1.     The Foreign Corrupt Practices Act of 1977, as amended, Title 15, United States Code, Sections 78dd-1, *et seq.* (the "FCPA"), was enacted by Congress for the purpose of, among other things, making it unlawful to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value to a foreign government official for the purpose of assisting in obtaining or retaining business for, or directing business to, any person.

## RELEVANT INDIVIDUALS AND ENTITIES

2.     Corporación Eléctrica Nacional, S.A. ("Corpoelec"), was Venezuela's state-owned electricity company. Corpoelec was controlled by the Venezuelan government and performed a function that Venezuela treated as its own, and thus was an "instrumentality" of the government of Venezuela as that term is used in the FCPA.

3.     Corporación Venezolana de Comercio Exterior S.A. ("Corpovex") was Venezuela's state-owned and state-controlled foreign trade corporation, and it entered into contracts on Corpoelec's behalf.

4.     Defendant **LUIS ALFREDO MOTTA DOMINGUEZ** was a citizen and national of Venezuela. **MOTTA DOMINGUEZ** was the Minister of Electrical Energy in Venezuela and the President of Corpoelec. **MOTTA DOMINGUEZ** was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2) and 78dd-3(f)(2).

5.     Defendant **EUSTIQUIO JOSE LUGO GOMEZ** was a citizen and national of Venezuela and was the director of procurement at Corpoelec. **LUGO GOMEZ** was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Sections 78dd-2(h)(2) and 78dd-3(f)(2).

6.     Luis Alberto Chacin Haddad was a citizen of Venezuela and resident of the United States. Chacin was a "domestic concern" and an officer, employee, and agent of domestic concerns as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(a) and 78dd-2(h)(1).

2

7. Company A was a company registered in Florida, headquartered in Miami, Florida, and owned and managed by Luis Alberto Chacin Haddad. Company A had a bank account at Citibank N.A. (account ending 1390) in the Southern District of Florida. Company A was a "domestic concern" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

8. Company B was a company registered in Florida, headquartered in Miami, Florida, and owned and managed by Luis Alberto Chacin Haddad. Company B had a bank account at Bank of America N.A. (account ending 8828) in the Southern District of Florida. Company B was a "domestic concern" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

9. Jesus Ramon Veroes was a citizen and national of Venezuela who owned and operated various businesses in Venezuela and the United States. Veroes was a "person" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-3(f)(1).

10. Co-Conspirator 1 was a dual citizen of Venezuela and the United States. Co-Conspirator 1 was a "domestic concern" and an officer, employee and agent of a domestic concern as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(a) and 78dd-2(h)(1).

11. Company C was a company registered in Florida, and headquartered in Port St. Lucie, Florida. Company C was a "domestic concern" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1). Co-Conspirator 1 was the president of Company C.

12. Co-Conspirator 2 was a dual citizen of Venezuela and the United States. Co-Conspirator 2 was a "domestic concern" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

## COUNT 1
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1. Paragraphs 1 through 12 of the General Allegations Section are re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around January 2016, through in or around December 2018, in the Southern District of Florida, and elsewhere, the defendants,

**LUIS ALFREDO MOTTA DOMINGUEZ** and
**EUSTIQUIO JOSE LUGO GOMEZ,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate and agree with each other, Jesus Ramon Veroes, Luis Alberto Chacin Haddad, and other persons known and unknown to the Grand Jury, to commit an offense against the United States, that is, Title 18, United States Code, Section 1956:

    a. to knowingly conduct a financial transaction which involves the proceeds of specified unlawful activity, knowing that the property in the financial transaction represented the proceeds of some form of unlawful activity, with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

    b. to knowingly conduct a financial transaction which involves the proceeds of specified unlawful activity, knowing the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18

4

United States Code Sections 1956(a)(1)(B)(i);

    c. to knowingly transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

    d. to knowingly transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represent the proceeds of some form of unlawful activity, and knowing that transportation, transaction, and transfer was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of proceeds of such specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

It is further alleged that the specified unlawful activity is the following: (a) felony violations of the Foreign Corrupt Practices Act, Title 15, United States Code, Sections 78dd-2 and 78dd-3; and (b) offenses against a foreign nation, specifically Venezuela, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, as provided by Title 18, United States Code, Section 1956(c)(7)(B)(iv).

### **PURPOSE OF THE CONSPIRACY**

3. It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by making and concealing corrupt payments to **LUIS ALFREDO MOTTA DOMINGUEZ** and **EUSTIQUIO JOSE LUGO GOMEZ** in exchange for **MOTTA**

**DOMINGUEZ** and **LUGO GOMEZ** awarding contracts on behalf of Corpoelec to the Florida-registered companies owned and controlled by the bribe-paying co-conspirators.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **LUIS ALFREDO MOTTA DOMINGUEZ**, **EUSTIQUIO JOSE LUGO GOMEZ**, and their co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following conduct in the Southern District of Florida and elsewhere:

4.  In or around the second half of 2015, Luis Alberto Chacin Haddad, Co-Conspirator 1, and Co-Conspirator 2 submitted bids to Corpoelec in hopes of obtaining contracts to provide equipment. Despite submitting low and competitive bids, they were not successful in securing contracts with Corpoelec.

5.  In or around the first half of 2016, Luis Alberto Chacin Haddad, Co-Conspirator 1, and Co-Conspirator 2 joined together with Jesus Ramon Veroes, a close acquaintance of **LUIS ALFREDO MOTTA DOMINGUEZ,** to pursue contracts with Corpoelec. Thereafter, Veroes met with **MOTTA DOMINGUEZ** to discuss what would be required to obtain the contracts. **MOTTA DOMINGUEZ** told Veroes that he would award the Corpoelec contracts to Veroes and his business partners (Luis Alberto Chacin Haddad, Co-Conspirator 1, Co-Conspirator 2), and that Veroes should discuss and negotiate the terms with **EUSTIQUIO JOSE LUGO GOMEZ**.

6.  As directed, Jesus Ramon Veroes met with **EUSTIQUIO JOSE LUGO GOMEZ** to discuss and negotiate the awarding of the contracts. **LUGO GOMEZ** explained that for every contract awarded by Corpoelec, Veroes, Luis Alberto Chacin Haddad, and their associates would be required to pay **LUGO GOMEZ** and **LUIS ALFREDO MOTTA DOMINGUEZ** kickbacks from the profits.

7. After finalizing the negotiations, **LUIS ALFREDO MOTTA DOMINGUEZ** and **EUSTIQUIO JOSE LUGO GOMEZ** directed or caused Corpoelec to award Company A, Company B, and Company C multiple contracts for the supply of equipment.

8. Luis Alberto Chacin Haddad, Jesus Ramon Veroes, and their co-conspirators inflated the price of the contracts to increase their own profits and the corrupt payments going to **LUIS ALFREDO MOTTA DOMINGUEZ** and **EUSTIQUIO JOSE LUGO GOMEZ**.

9. **LUIS ALFREDO MOTTA DOMINGUEZ** and **EUSTIQUIO JOSE LUGO GOMEZ** caused Corpoelec to direct payments on the corrupt and inflated contracts to bank accounts located in the Southern District of Florida and elsewhere.

10. Co-conspirators would and did discuss the corrupt scheme and the amount of bribes that would be paid to **LUIS ALFREDO MOTTA DOMINGUEZ** and **EUSTIQUIO JOSE LUGO GOMEZ** on the contracts awarded to Company A, Company B, and Company C, and how the profits otherwise should be divided among the co-conspirators.

11. In discussions with his co-conspirators, Luis Alberto Chacin Haddad anticipated that the initial bribe payment to **LUIS ALFREDO MOTTA DOMINGUEZ** and **EUSTIQUIO JOSE LUGO GOMEZ** would be approximately $2 million.

12. **LUIS ALFREDO MOTTA DOMINGUEZ** and **EUSTIQUIO JOSE LUGO GOMEZ** approved the following Corpoelec contracts on behalf of Corpoelec: (a) contract dated on or about July 11, 2016, for Company A to provide forklifts to Corpoelec for $6,429,000; (b) contract dated on or about August 1, 2016, for Company A to provide transformers to Corpoelec for $9,798,250; and (c) contract dated on or about July 21, 2016, for Company A to provide generators to Corpoelec for $893,713.89.

13. Pursuant to the corrupt agreement, between August 11, 2016, and June 20, 2017, Company A, Company B, and Company C obtained eight additional contracts with Corpoelec and Corpovex, totaling approximately $45 million, to supply Corpoelec with equipment. The additional contracts included a contract between Company B and Corpoelec for Company B to supply lightbulbs for approximately $5,799,999, which was dated on or about December 6, 2016, and signed by **LUIS ALFREDO MOTTA DOMINGUEZ**.

14. Between on or about July 12, 2016, and on or about May 4, 2017, Corpoelec wire transferred, from bank accounts in and outside the United States, a total of approximately $16,947,574.46 in payments on corruptly obtained contracts to Company A's Citibank account (ending 1390) in the Southern District of Florida.

15. Between on or about October 4, 2016 and on or about May 11, 2017, Corpoelec wire transferred, from a bank account outside the United States, a total of approximately $4,254,394.85 in payments on corruptly obtained contracts to Company B's Bank of America account (ending 8828) in the Southern District of Florida.

16. Throughout the course of the conspiracy, and in exchange for all these lucrative contracts and improper business advantages, Jesus Ramon Veroes and Luis Alberto Chacin Haddad caused bribe payments to be made to, or for the benefit of, **LUIS ALFREDO MOTTA DOMINGUEZ** and **EUSTIQUIO JOSE LUGO GOMEZ** as directed by the defendants. Those payments included cash deliveries during the last three months of 2018 totaling approximately $270,000 to an individual representing **MOTTA DOMINGUEZ** and **LUGO GOMEZ** and the following wire transfers, among others, made to the accounts of unrelated third party nominees in order to hide and conceal the true nature of the corrupt payments:

a. on or about August 24, 2016, the wire transfer of approximately $71,250 from a Citibank account (ending 1390) in the Southern District of Florida to an account in Spain; and

b. on or about September 13, 2018, the wire transfer of approximately $401,300 from an overseas account controlled by Chacin to an account in Spain.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 2-7
### Laundering of Monetary Instruments
### (18 U.S.C. § 1956(a)(2)(A))

1. Paragraphs 1 through 12 of the General Allegations Section and paragraphs 3 through 16 of Count 1 are re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around January 2016, through in or around December 2018, in the Southern District of Florida and elsewhere, the defendants,

**LUIS ALFREDO MOTTA DOMINGUEZ and
EUSTIQUIO JOSE LUGO GOMEZ,**

did knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, that is, (a) felony violations of the FCPA under Title 15, United States Code, Sections 78dd-2 and 78dd-3; and (b) offenses against a foreign nation, specifically Venezuela, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, pursuant to Title 18, United States Code, Section 1956(c)(7)(B)(iv), specified in each count below:

9

| Count | Approximate Date | Financial Transaction |
|---|---|---|
| 2 | October 11, 2016 | Wire transfer in the amount of approximately $3,428,409 from and through an account in Venezuela to a Citibank account (ending 1390) located in the United States, specifically in the Southern District of Florida. |
| 3 | October 24, 2016 | Wire transfer in the amount of approximately $198,537 from and through an account in Russia to a Bank of America account (ending 8828) located in the United States, specifically in the Southern District of Florida. |
| 4 | November 16, 2016 | Wire transfer in the amount of approximately $981,352 from and through an account in Russia to a Citibank account (ending 1390) located in the United States, specifically in the Southern District of Florida. |
| 5 | December 15, 2016 | Wire transfer in the amount of approximately $445,906 from and through an account in Portugal to a Citibank account (ending 1390) located in the United States, specifically in the Southern District of Florida. |
| 6 | March 31, 2017 | Wire transfer in the amount of approximately $2,027,929 from and through an account in Russia to a Bank of America account (ending 8828) located in the United States, specifically in the Southern District of Florida. |
| 7 | May 4, 2017 | Wire transfer in the amount of approximately $3,539,986 from and through an account in Russia to a Citibank account (ending 1390) located in the United States, specifically in the Southern District of Florida. |

In violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

## COUNT 8
**Laundering of Monetary Instruments**
**(18 U.S.C. § 1956(a)(2)(B)(i))**

1.  Paragraphs 1 through 12 of the General Allegations Section and paragraphs 3 through 16 of Count 1 are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about August 24, 2016, in the Southern District of Florida and elsewhere, the defendants,

**LUIS ALFREDO MOTTA DOMINGUEZ and
EUSTIQUIO JOSE LUGO GOMEZ,**

did knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States, knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of proceeds of specified unlawful activity, that is, (a) felony violations of the FCPA, Title 15, United States Code, Sections 78dd-2 and 78dd-3; and (b) offenses against a foreign nation, specifically Venezuela, involving bribery of a public official, and the misappropriation, theft, and embezzlement of public funds by and for the benefit of a public official, pursuant to Title 18, United States Code, Section 1956(c)(7)(B)(iv), as specified below:

| Count | Approximate Date | Financial Transaction |
|---|---|---|
| 8 | August 24, 2016 | Wire transfer in the amount of approximately $71,250 from a Citibank account (ending 1390) located in the United States, specifically in the Southern District of Florida, to and through an account in Spain. |

In violation of Title 18, United States Code, Section 1956(a)(2)(B)(i) and 2.

## FORFEITURE
## (18 U.S.C. § 982(a)(1))

1. The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture of property to the United States of America in which the defendants, **LUIS ALFREDO MOTTA DOMINGUEZ** and **EUSTIQUIO JOSE LUGO GOMEZ**, have an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1956, as alleged in Counts 1 through 8 of this Indictment, the defendants, **LUIS ALFREDO MOTTA DOMINGUEZ** and **EUSTIQUIO JOSE LUGO GOMEZ**, shall forfeit to the United States all property, real or personal, involved in such offense, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

3. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p).

<mark>All pursuant to Title 18, United States Code, Section 982(a)(1), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, 982(b)(1).

A TRUE BILL

_____
FOREPERSON

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

ROBERT ZINK
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION

Michael B. Nadler
Assistant United States Attorney

John-Alex Romano
Trial Attorney

DEBORAH CONNOR
CHIEF, MONEY LAUNDERING AND
ASSET RECOVERY SECTION
CRIMINAL DIVISION

Joseph Palazzo
Trial Attorney

</mark>

All pursuant to Title 18, United States Code, Section 982(a)(1), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, 982(b)(1).

A TRUE BILL

_____
FOREPERSON

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

ROBERT ZINK
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION

Michael B. Nadler
Assistant United States Attorney

John-Alex Romano
Trial Attorney

DEBORAH CONNOR
CHIEF, MONEY LAUNDERING AND
ASSET RECOVERY SECTION
CRIMINAL DIVISION

Joseph Palazzo
Trial Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA					CASE NO. _____

vs.
									**CERTIFICATE OF TRIAL ATTORNEY***

LUIS ALFREDO MOTTA DOMINGUEZ
and EUSTIQUIO JOSE LUGO-GOMEZ

			Defendants.
_____/		**Superseding Case Information:**

**Court Division**: (Select One)			New Defendant(s)		Yes ____	No ____
								Number of New Defendants	____
_X_	Miami		____	Key West		Total number of counts		____
____	FTL		____	WPB	____	FTP

	I do hereby certify that:

	1.	I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

	2.	I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

	3.	Interpreter:	(Yes or No)	_YES_
		List language and/or dialect	_SPANISH_

	4.	This case will take  _5_  days for the parties to try.

	5.	Please check appropriate category and type of offense listed below:

		(Check only one)					(Check only one)

	I	0 to 5 days		_X_			Petty		____
	II	6 to 10 days		____			Minor		____
	II	11 to 20 days		____			Misdem.		____
	IV	21 to 60 days		____			Felony		_X_
	V:	61 days and over	____

	6.	Has this case been previously filed in this District Court?	(Yes or No)	_No_
		If yes:
		Judge: _____				Case No. _____
		(Attach copy of dispositive order)
		Has a complaint been filed in this matter?	(Yes or No)	_NO_
		If yes:
		Magistrate Case No. _____
		Related Miscellaneous numbers: _____
		Defendant(s) in federal custody as of _____
		Defendant(s) in state custody as of _____
		Rule 20 from the _____	District of _____

	Is this a potential death penalty case? (Yes or No)	_No_

	7.	Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?		____ Yes	_X_ No

	8.	Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?		____ Yes	_X_ No

						_____
						MICHAEL B. NADLER
						ASSISTANT UNITED STATES ATTORNEY
						Florida Bar No. 51264

*Penalty Sheet(s) attached							REV 4/8/08

PUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: LUIS ALFREDO MOTTA DOMINGUEZ

**Case No**: _____

Count #: 1

Conspiracy to Commit Money Laundering

Title 18, United States Code, Sections 1956(h)

\* **Max. Penalty**:    Twenty (20) years' imprisonment

Count #: 2-7

Laundering Monetary Instruments

Title 18, United States Code, Section 1956(a)(2)(A)

\* **Max. Penalty**:    Twenty (20) years' imprisonment

Count #: 8

Laundering Monetary Instruments

Title 18, United States Code, Section 1956(a)(2)(B)

\* **Max. Penalty**:    Twenty (20) years' imprisonment

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

PUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: EUSTIQUIO JOSE LUGO-GOMEZ

**Case No**: _____

Count #: 1

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\* Max. Penalty**:        Twenty (20) years' imprisonment

Count #: 2-7

Laundering Monetary Instruments

Title 18, United States Code, Section 1956(a)(2)(A)

**\* Max. Penalty**:        Twenty (20) years' imprisonment

Count #: 8

Laundering Monetary Instruments

Title 18, United States Code, Section 1956(a)(2)(B)

**\* Max. Penalty**:        Twenty (20) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**